Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael J. Ellis
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                              Plaintiff,

            vs.

BRADLEY DALE HULL,

                              Defendant.

Case No. 2:20-CR-00128-TOR-2

Government's Trial Brief

Plaintiff, United States of America, by and through Vanessa R. Waldref, United

States Attorney for the Eastern District of Washington, and Michael J. Ellis, Assistant

United States Attorney for the Eastern District of Washington, submits the following

trial brief.

## I.    STATUS OF THE CASE

A.    A jury trial is scheduled to commence at 8:30 a.m., on May 16, 2022.

B.    Estimated time for the Government's case in chief for trial is one day,

      excluding jury selection.

C.    The Defendant has been released on conditions. *See* ECF No. 221.

D.    Counts 5 and 6 of the Superseding Indictment, *see* ECF No. 92, provide

as follows:

## COUNT 5

On or about February 7, 2020, in the Eastern District of Washington, the Defendant, BRADLEY DALE HULL, knowingly possessed with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(i).

## COUNT 6

On or about February 7, 2020, in the Eastern District of Washington, the Defendant, BRADLEY DALE HULL, knowingly possessed with intent to distribute 50 grams or more of actual (pure) methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).

## II.    STATUTORY SCHEME
### 21 U.S.C. § 841(a)(1)

In relevant part, 21 U.S.C. § 841(a)(1) reads: "[I]t shall be unlawful for any person knowingly or intentionally . . . to . . . possess with intent to . . . distribute . . . a controlled substance."

## III.    SUMMARY OF GOVERNMENT'S EVIDENCE

Prior to February 7, 2020, Detective McCrillis (retired) with the Spokane County Sheriff's Office initiated an investigation concerning both the Defendant, Bradley Hull, and the Defendant's then-girlfriend, Misty Haynes. A number of controlled purchases were conducted from Haynes at a residence located at 10007 E. Broadway Avenue, Spokane, Washington.

On February 7, 2020, Detective McCrillis and others executed a search warrant

on the 10007 E. Broadway Avenue residence. Neither the Defendant nor Haynes were present, but law enforcement questioned other residents regarding their knowledge of drug trafficking activities. Knowing that Haynes often stayed with the Defendant at the Defendant's residence located at 7721 N. Wilding Road, Spokane, Washington, Detective Melton was stationed to surveil the Defendant's residence while the search warrant was being executed on 10007 E. Broadway Avenue. Detective Melton observed a white Chevrolet Malibu known to the associated with Haynes parked outside the Defendant's residence.

Shortly after the detectives finished executing the search warrant on 10007 E. Broadway Avenue, Detective Melton observed the Defendant quickly exit his residence, run to the driver's side of Haynes' vehicle carrying a plastic bag, and then place the bag inside the vehicle's trunk. The Defendant then ran back inside the residence. Haynes was then observed running from the residence, getting into the driver's seat of the vehicle, and then running back inside the residence. One minute later both the Defendant and Haynes ran from the residence to the vehicle, where Haynes got into the driver's seat while the Defendant entered the front passenger seat. The Defendant fell down in the snow while attempting to enter the vehicle. The vehicle then drove away from the residence.

The vehicle was stopped shortly thereafter. When contacted, the Defendant's pants were observed to be wet and he was barefoot. The Defendant stated that he had fallen while running to the car and had been in a hurry so forgot to put shoes on.

The vehicle was seized and searched pursuant to a search warrant. Upon opening the trunk, Detective Melton identified a grocery bag on top of other items in the center of the trunk as the bag that he had seen the Defendant place in the trunk. The bag was searched and found to contain 640 grams of a mixture or substance containing a detectable amount of heroin, two baggies containing a total of 72.6 grams of methamphetamine, over $13,000 in U.S. Currency, and various coins and coin collector cases.

After the events of February 7, 2020, Detective McCrillis planned to arrest the Defendant on state charges on May 12, 2020. Detective McCrillis observed the Defendant driving a vehicle, and followed the Defendant until the Defendant parked, exited, and began running behind a house. The Defendant was apprehended and his vehicle seized pending the execution of a search warrant. A cell phone was seized from the driver's seat area of the vehicle. An envelope containing a letter written to "Brad Hull" was also seized from the center console.

The seized cell phone was later searched pursuant to a federal search warrant and, when reviewed, found to contain (1) "selfie" photos of the Defendant; (2) text messages from the Defendant that referenced the messages were from "Brad"; (3) photos of coins in collector cases; and (4) text messages between the Defendant and various third parties discussing the Defendant selling controlled substances.

# IV.  LEGAL ISSUES

## a.  Elements of the Crime

The elements of a § 841(a)(1) offense are:

1.  The defendant knowingly possessed a controlled substance.

2.  The defendant possessed the controlled substance with the intent to deliver it to another person.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of the controlled substance to another person, with or without any financial interest in the transaction.

Further, should the Defendant be found guilty of possessing a controlled substance with intent to distribute, the Government must prove beyond a reasonable doubt that the Defendant possessed a sufficient amount of controlled substance with intent to distribute to prove the charged sentencing factors under 21 U.S.C. § 841(b)(1)(B)(i) and (b)(1)(A)(viii).

The Defendant has stipulated that the amounts of a mixture or substance containing a detectable amount of heroin and actual (pure) methamphetamine seized exceeded, respectively, 100 grams and 50 grams. *See* ECF No. 197.

## b.  Aiding and Abetting Instruction

"In the context of aider and abettor liability, there is a single crime that the defendant is charged with committing; he could commit that offense by directly performing illegal acts himself, or by aiding, abetting, counseling, commanding,

inducing, or procuring the commission of the offense." *See United States v. Garcia*, 400 F.3d 816, 819 (9th Cir. 2005). "[A]iding and abetting is embedded in every federal indictment for a substantive crime." *See id.* at 820. The Government accordingly requests that the Court provide "aid and abet" instructions concerning liability for both Counts 5 and 6.

## V.    STIPULATIONS & AGREEMENTS

The Defendant has entered a Stipulation regarding the weights of the seized heroin and methamphetamine. *See* ECF No. 197.

## VI.    EVIDENTIARY ISSUES

### 1. Defendant's Statements

Under the Federal Rules of Evidence, a defendant's statement is admissible if offered against him, but a defendant may not present his own prior statements. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988). The Government intends to offer statements made by the Defendant to Detective Melton on February 7, 2020 as well as statements made by the Defendant using his cellular device.

### 2. Statements from Third Parties re Text Messages

The Government's proposed Exhibits 39, 40, 41, 42, and 44 contain statements from third parties in text messages with the Defendant. These third-party statements are admissible on various grounds.

First, statements may not be hearsay when "offered only for context, not for

'the truth of the matter asserted.'" *See United States v. Barragan*, 871 F.3d 689, 705 (9th Cir. 2017). The third party's statements in, for example, Exhibit 39 are accordingly not hearsay – the Government is not offering the third party's statement to prove that the third party genuinely "need[ed] a half piece of dark"; the statement is offered to provide context for the Defendant's response – "I don't think I have that much dark left I think I've only got about a quarter left maybe but I got the white but that's expensive that's going to be damn near 400 but I'll sell it to you for 375."

Second, a question "may constitute non-hearsay" but "where the declarant intends the question to communicate an implied assertion and the proponent offers it for this intended message, the question falls within the definition of hearsay." *See United States v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015). "The effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless intended to be one." Fed. R. Evid. 801 n. Subdivision (a) (1972 Proposed Rules). "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801 n. Subdivision (c) (1972 Proposed Rules). The Government's Exhibit 42 ("How much 4 half night") contains a question, not an assertion. The message's significant "lies solely in the fact that it was made" and, as an inquiry as to price, was not intended as an assertion. Exhibit 42 is accordingly not subject to the prohibition against hearsay.

Third, many of the third-party statements are simply not being offered for the truth of the matter asserted. For example, in Exhibit 44 a third-party messaged the Defendant "Hey this is ed. I'm looking for a half piece." The Government is not offering the message to prove either that "ed" was the sender or that "ed" was sincerely "looking for a half piece." The significance of the message is solely "in the fact that it was made" – that a third party sent the Defendant a message with the phrase "half piece," which the Government contends constitutes drug jargon referencing a quantity of controlled substance.

### 3. Photographs of Coins in Collector Cases re Cellular Device

As noted in the Government's Response to the Defendant's Second Motion in *Limine*, the Government intends to offer Exhibits 35, 36, and 37 – three photographs of coins in collector cases recovered from the Defendant's cellular device. The photographs are relevant as they connect the Defendant to a relatively unique item – coins in and around collector cases – which were also found in the grocery bag along with the controlled substances and U.S. Currency.

### 4. Contested Evidence Regarding Intent to Distribute

As noted in the Government's Third Notice of Expert Testimony, the Government intends to offer testimony that certain quantities of methamphetamine and heroin are more closely associated with trafficking in those substances than possession for personal use. *See* ECF No. 210 at 3. As amounts associated with personal use are substantially less than the amounts of heroin and methamphetamine

found in the grocery bag, the above testimony provides evidence that the Defendant possessed the controlled substances with intent to distribute.

Further, as noted in the Government's Response to the Defendant's Second Motion in *Limine*, the Government intends to offer the text messages recovered from the Defendant's cellular device as probative evidence of the Defendant's intent to distribute the controlled substances. *See* ECF No. 225 at 6–8.

Finally, the Court has reserved ruling on the Government's proposed Rule 404(b) evidence – the Defendant's prior conviction for conspiracy to deliver a controlled substance – heroin. *See* ECF Nos. 163, 185 at 3. During argument, the Court indicated that the relevance of the Defendant's prior conviction hinged on whether the Defendant asserted a defense akin to mistake. Should the Government believe that the Defendant has "opened the door" to his prior conviction during trial, the Government intends to raise the matter with the Court outside the presence of the jury.

### 5. Defense Examination re Spokane County Investigation

As noted in the Court's Order on Pretrial Motions, the Defendant "indicated that he may want to cross-examine officers in more detail" regarding the Spokane County investigation that resulted in the search warrant on 10007 E. Broadway Avenue. *See* ECF No. 185 at 3. As the Defendant is aware, the Spokane County investigation concerned both the Defendant and Haynes and Detective McCrillis was informed that (1) the Defendant was supplying Haynes with controlled substances,

(2) it was not unusual for the Defendant to answer Haynes' cell phone, and (3) the Defendant was present during at least one controlled purchase from Haynes.

"[T]he 'opening the door' principle allows parties 'to introduce evidence on the same issue to rebut any *false* impression that might have resulted from the earlier admission.'" *See United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir. 2007) (emphasis in original) (quoting *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988)). "Presenting a theory of the case that can be effectively rebutted by otherwise-inadmissible evidence, however, does not by itself open the door to using such evidence; only partial, misleading use of the evidence itself can do so." *See id.* at 1038.

Accordingly, should the Defendant inquire into the underlying Spokane County investigation in a misleading manner – *i.e.*, that the Defendant was not implicated in the underlying investigation – the Government should be entitled to correct any false impression.

### 6. Reciprocal Discovery

Federal Rule of Criminal Procedure 16(b)(1)(A) mirrors Rule 16(a)(1)(E), which defines the Government's discovery obligations. It provides:

> If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
>
> (i) the item is within the defendant's possession, custody, or

control; and

(ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16(b)(1)(A). Similar provisions require the production of the results or reports of any physical, mental, or scientific test, Rule 16(b)(1)(B), and any anticipated expert testimony. Fed. R. Crim. P. 16(b)(1)(C).

Prior statements of defense witnesses are also required under the rule. Per Rule 26.2, a defendant's disclosure obligations parallel the government's obligations under the Jencks Act. *See* Fed. R. Crim. P. 26.2 Advisory Committee notes ("The rule . . . is designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act, 18 U.S.C. § 3500.")

Should the Defendant intend to call witnesses, the Government specifically seeks prior statements of such witnesses, per Rule 26.2. Should the Defendant seek to introduce

//

//

//

//

//

evidence, the Government requests an opportunity to examine such evidence prior to trial.

Dated: May 9, 2022.

Vanessa R. Waldref
United States Attorney


_s/ Michael J. Ellis_
Michael J. Ellis
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Stephen R. Hormel; Zachary L. Ayers

*s/ Michael J. Ellis*
Michael J. Ellis
Assistant United States Attorney